UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LINDA STRENKOSKI,**<br><br>Plaintiff,<br><br>v.<br><br>**APEX CHEMICAL INC.,**<br><br>Defendant. | Civ. No. 2:13-cv-2201 (WJM)<br><br>**AMENDED OPINION** |

On April 8, 2013, Plaintiff Linda Strenkoski filed a two-count Complaint against Defendant Apex Chemical, Inc. asserting retaliation and a hostile work environment under the New Jersey Law Against Discrimination ("NJLAD"). After Defendant failed to appear, the Court issued a default judgment against Defendant as to liability only. The Court ordered an evidentiary hearing to assess the damages owed to Plaintiff. For the reasons set forth below, the Court will award Plaintiff damages in the amount of $21,750.00.

Defendant is an industrial chemical supply company. Plaintiff testified that there are three or four such companies in the region. Plaintiff testified that prior to joining Defendant's company, she worked at one of Defendant's competitors for 12 years. Plaintiff testified that when the competitor went bankrupt, she was hired by Defendant in January 2012. Plaintiff testified that Defendant paid her a weekly on-the-books salary of $500.00, in addition to an off-the-books cash commission that ranged from $200.00 to $400.00. Plaintiff testified that while she worked for Defendant, she was subjected to harassment on account of her gender. Specifically, Plaintiff testified that male co-workers would describe their sex life and ask Plaintiff to engage in sexual acts. Plaintiff testified that working at Defendant's office made her feel "dirty, humiliated, and embarrassed." Plaintiff testified that she was terminated in June 2012, several days after she complained to management about an incident of harassment. However, a declaration Plaintiff filed with the Court stated that Plaintiff worked for Defendant until April 2012, not June 2012.

Plaintiff testified that as a result of the harassment she suffered, she developed blood blisters, suffered from heightened stress, and experienced difficulty sleeping, for which she took sleeping pills. The record contains no bills for prescription medication or doctor visits.

Plaintiff testified that since she was terminated, she has sent out a great many job applications but was only able to secure a temporary summer position. Plaintiff also testified that after she was terminated, she received two unemployment checks totaling roughly $1,000.00. Plaintiff failed to provide the Court with documentary evidence of her unemployment payments. However, Plaintiff did submit a 2012 W-2 from Defendant indicating that she earned $2,815.00 in wages. Notably, this figure is seemingly inconsistent with Plaintiff's testimony that she was provided with on-the-books compensation of $500.00 per week for a period of months.

Under the NJLAD, a victim of discrimination can recover emotional damages, as well as front pay. N.J.S.A. 10:5-13; N.J.S.A. 10:5-17. "Front pay is a concept that attempts to project and measure the ongoing economic harm, continuing after the final day of trial, that may be experienced by a plaintiff who has been wrongfully discharged in violation of anti-discrimination laws." *Quinlan v. Curtiss-Wright Corp.*, 425 N.J. Super. 335, 350 (App. Div. 2012) (internal citations and quotations omitted).[1] Recently, the Appellate Division approvingly cited six factors that should be considered when determining front pay:

> (1) the employee's future in the position from which she was terminated;
> (2) her work and life expectancy;
> (3) her obligation to mitigate her damages;
> (4) the availability of comparable employment opportunities and the time reasonably required to find substitute employment;
> (5) the discount tables to determine the present value of future damages; and
> (6) other factors that are pertinent in prospective damage awards.

*Id.* (internal quotations and citations omitted). The Appellate Division recognized that "[f]ront pay awards may often depend on factors that are unknowable and often subject to change, such as future market trends, a plaintiff's employability, and whether the plaintiff would have remained in the same position if not for the discrimination." *Id.* at 353. The Appellate Division cautioned that a calculation of front pay should entail a "thoughtful balancing" of the relevant factors and should not be predicated on speculation. *Id.*

---

[1] "Front pay is conceptually related to, but slightly different from, the notion of damages awarded to a plaintiff for lost future earnings in a tort case." *Quinlan*, 425 N.J. Super. 335 at 350. "[F]ront pay generally compensates for the immediate loss of the position until the position would have ended or the employee would have left the company, while lost future earnings, a broader concept, compensates for the diminution in earning capacity caused by the discrimination." *Id.* Moreover, "[b]ecause lost future earnings encompasses loss to reputation, those damages can remain with the employee long into the future, given that the reputational loss can diminish her future ability to obtain employment." *Id.* Because Plaintiff has not provided the Court with evidence of damages related to reputational loss and diminished earnings capacity, the Court will restrict its analysis to front pay.

2

Finally, the Appellate Division explained that "plaintiff bears the burden of proving that the damages she claims are either permanent or will last for a reasonably determinable time." *Id.* at 369.

While the Appellate Division has described front pay damages as accruing on the date of verdict rather than the date of termination, Plaintiff makes no argument that her total damages—her damages accruing both before and after the date of default—should be treated as anything other than front pay damages.  Accordingly, the Court will determine economic damages solely by referencing the front pay damages standard.

To begin, the Court notes that it lacks relevant information about whether Plaintiff would have remained in her position if not for the discrimination she suffered at the hands of Defendant.  While Plaintiff worked at a prior employer for 12 years, she had only worked for Defendants for a period of months when she was terminated.  As such, it is by no means certain that she would have stayed with Defendants for anything close to 12 years.  As for work and life expectancy, Plaintiff did testify that she is 60 years old, but Plaintiff did not testify about the length of time she planned to work.  Nor did Plaintiff provide the Court with discount tables.  With respect to comparable employment, Plaintiff testified that while there are several other chemical supply companies in the region, she has not been able to find a job despite sending out multiple applications to a variety of businesses.

After weighing the various factors, the Court finds a reasonable front pay award would provide Plaintiff with approximately 16 months (1.33 years) of the on-the-books salary Plaintiff was paid by Defendant.  According to Plaintiff's W-2, Plaintiff earned roughly $3,000.00 in wages while she worked for Defendant.  Crediting Plaintiff's declaration, the Court finds that Plaintiff earned these wages between January and April, for a total of four months.  As such, had Plaintiff worked at Defendant for 16 months, her on-the-books wages would have been $12,000.00.  While Plaintiff testified that she received off-the-books commissions in addition to her on-the-books wages, Plaintiff provided no evidence to corroborate this claim.  As for emotional damages, the Court understands that Plaintiff has suffered blistering, stress, and sleeplessness, but there is no evidence that Plaintiff saw a doctor or was prescribed prescription medications.  The Court concludes that an award of $3,000.00 is reasonable to account for emotional damages.

Finally, the Court considers attorney's fees, which are also available under the NJLAD.  N.J.S.A. 10:5-27.1.  Prior to the hearing, Plaintiff's counsel submitted an attorney certification in which he stated that he had spent 12.7 hours on the matter at a rate of $450.00 per hour.  The Court finds that fee request reasonable.  The Court also finds it reasonable to award an additional 2.3 hours worth of attorney time for the hearing.  Accordingly, the Court will grant attorney's fees of $6,750.00.  The Court will enter judgment in the total amount of $21,750.00.

/s/ William J. Martini<br>**WILLIAM J. MARTINI, U.S.D.J.**

**Date: June 6, 2014**